996 people beat Kenneth Weatherspoon. The compliance allegations weren't corroborated. Now, officers and a state's attorney testified that Mr. Weatherspoon made admissions. Of course, as you noted, those admissions weren't memorialized in any way. There was no indication that the officers or the state's attorney asked him to memorialize them, and he refused. So it was a credibility contest between the allegations of the accused and Mr. Weatherspoon. And when you consider the evidence that was excluded, I think certainly that would have made a big difference. Because as I explained, there was an alternative source for the physical evidence, as well as the jury never heard the circumstances of the highly probative initial. Courts have well recognized that the first outcry of abuse is highly probative about the reliability of those allegations, and the jury heard nothing about the circumstances under which they were made. More pointedly, isn't it true that if you exclude the circumstances and the timing of the outcry, you also exclude the opportunity for the defendant to raise the issue of motive to fabricate? Yes, that's another. I think, again, the understanding of why the initial outcry is so probative. And again, this case is rather unique, because of the timing of the outcry and the evidence that was excluded was part of that timing. And just the circumstances themselves suggest the motive that there was a theory that the defense could not present was that there was a motive to deflect attention away from the situation where this outcry was initially made. Does the record reflect what, if anything, ultimately happened with regards to the 18-year-old individual that the victim was found in bed with just prior to the initial outcry? Are you asking what's? Was there a consequence? Do we know whether this was ever pursued, whether a prosecution resulted? Do we know anything as it relates to the 18-year-old that she was found in bed with? There's nothing in the record to indicate what happened with those in regard to the 18-year-old grandson. We just know from that pretrial motion that was litigated, the prosecutor's statements about that the grandmother found her 18-year-old grandson in bed with the accused. And that's the circumstances that triggered the initial outcry. There was nothing additional about what happened to the grandson. Her grandson, 18 years old, was found in bed with the 14-year-old. And then immediately, the focus shifted to the stepfather and the 18-year-old we never heard from again. That's correct. And that's what happened. With the record, it is certainly not clear that anything happened to him. And the defense never even knew who the 18-year-old was. So they were not allowed to even investigate him. Is that correct? Well, I don't. Yeah, I mean, we know that the neighbor's name was known. And we know that the 18-year-old was the grandson of the neighbor. So I mean, this wasn't a complete stranger. But so defense counsel, it was known in terms of developing, in terms of presenting this evidence at trial, it wasn't completely unknown who this person was. The doctor was not able to say for how long she believed this child had had sexual activity. No. She said that in terms of was there any indication of forced use, she said that sometimes things can heal over time. But she wasn't, I don't, her opinion wasn't specific about it had to have occurred over this period of time or not period of time necessarily as much as this long ago or specific times she wasn't able to give. OK, well, how do you get over the rape shield? Well, the rape shield statute. I mean, you've got the two elements, consent and constitutionality. They're not, I think you could have given us more on that. Well, I think. Or you may want to give us more. Sure, I'd be happy to make it more clear for the court. The rape shield statute, as you noted, there's an exception for when it's constitutionally required, including the right to present a complete defense and confront the allegations against him, against the defendant. And when the evidence that's sought to be admitted is directly relevant and probative of matters at issue, not collateral, then that's when the rape shield statute yields so that the defendant can exercise his constitutional rights to present a complete defense and confront the allegations against him. And again, here, that would be to rebut the strong presumption that the source of the physical evidence of sexual activity had to have only come from Mr. Weatherspoon. And the circumstances of the initial outcry, which are considered to be highly probative of the reliability of those allegations, that to present the theory that those allegations were not reliable based on the timing that they were made and that there was circumstances to suggest the motive to deflect attention away from the situation she was found in. So it's under those theories are protected. The defendant has a right to present a complete defense under the Constitution. And that's when the rape shield statute has to yield. Because these facts, this is excluded evidence, were relevant and probative of matters. So that's how the rape shield statute needs to yield under those circumstances. In this case, isn't it true that the defendant was only convicted of some of the charges after extensive jury deliberation, isn't that right? Yeah, I believe the jury deliberated for about nine hours over a two-day period. There was two charges submitted to the jury, and they were unable to reach a verdict on one of those. Of the most significant charge? Yes. And is it correct my understanding that two things implicate the defendant in this case, the victim and the undocumented statements, non-memorialized statements of the defendant that he later disavows? Is that right? Yes. And I think it's, you know, the other, one other piece of evidence to say presented was the doctor's testimony. And she told the jury that, to a reasonable degree of scientific certainty, that her examination was consistent with the statements. Of course, as I've argued in the brief, that the basis of that opinion wasn't fully presented to the jury. So I think. Consistent with her testimony that events occurred with respect to her homosexual nature, but not necessarily probative of the fact or the allegation that this defendant committed those acts, right? Correct. The only thing that ties this defendant to this case is her statements and statements made by the police that are allegedly attributed to him that were undocumented in any police report and that he later denied ever making. Is that right? That's correct. And I just mentioned the doctor's testimony as it really did not. Once you fully know the circumstances of this case, it really doesn't aid the jury in answering that question. So it really is the word of the complainant versus the word of the alleged statements which weren't memorialized. Counsel, this child may have been the victim of many sexual partners. Is that correct? That wouldn't mitigate what this defendant had done. I mean, she could have had sex with the defendant and the 18-year-old and anybody else we wouldn't know about. But that still wouldn't do anything to what she was saying about this defendant. Well, I think what's important to know again, I think it's the timing of the outcry. There's several cases that hold that where this isn't an attempt to just introduce another relationship to tarnish the character of the complainant. It has to be directly related to matters at issue. And the matters at issue here are the jury heard that there was physical evidence of sexual activity. And it's that powerful presumption that triggers the need to, when there is an alternative source for that information, for that evidence, that the defendant has a right to present that alternative source. As well as when this complainant initially outcried, there were circumstances under which where she was intending to suggest a motive to deflect attention away from herself. So I think the evidence here is directly related to relevant and probative matters at issue, and that the Constitution protects the defendant's, Mr. Weatherspoon's, right to present those theories to the jury. What about the argument the state makes that she couldn't have fabricated this that quickly, or that whatever you want to call it? Right, I think, you know, it's not, we know that this discovery that the grandmother made is what triggered the outcry. We don't know whether it was immediately at that point, you know, that's when she pointed the finger at Mr. Weatherspoon. It may have happened, you know, she discovered what's going on, and then there was questioning about it. Meaning it could have been a half an hour earlier. It could have been, exactly, precisely. And after the grandmother of the 18-year-old found out about it, then the mother of the child found out about it. Correct. But it wasn't until, I don't know, two weeks later that Karen Clark was told about it? Yeah, weeks later there was, you know, Karen Clark testified that weeks later she had a conversation with the complainant about this, and that, yes, so this was. And the child was not medically examined until July, the middle of July, is that correct? Yes, it was well after that point. From the time of the initial outcry was made, it's weeks and weeks later. You know, I think another point that I want to make sure to make is that, you know, not only was the evidence excluded, but the state capitalized on its exclusion during closing argument, telling the jury that they had heard the course of how the outcry had come out, and that the complainant was consistent throughout this ordeal. When, in fact, they had not heard how the course of the outcry had come out, they had not heard, they were unable to determine, you know, the prosecutor is telling the jury that she was consistent, although we don't know the precise content of the statements that she made when she initially accused Mr. Weatherspoon to the neighbor, to her mother. And then weeks later, even to the teacher. Although, you know, when the teacher testified, she didn't disclose the content of those statements. The prosecutor filled in the blanks, essentially by saying, you know, the complainant's been consistent this entire time. And so I think the exclusion of the evidence is enough to reverse Mr. Weatherspoon's conviction. But when you consider the fact that the prosecution capitalized on it, I think it's very clear that these errors are not harmless beyond a reasonable doubt. I'd just like to finish by saying that the truth of the allegations in this case were not tested. Relevant probative information was kept away from the jury on issues directly related to these allegations. The rape shield statute should shield the complainant from irrelevant evidence, but not used as a sword to deny the defendant's constitutional rights. And for these reasons and those stated in the brief, we ask that this Court reverse Mr. Weatherspoon's conviction. Is there other? Thank you. Good morning, Your Honors. Again, may it please the Court.  of the state of Illinois. This issue came before the trial court and comes before this court under the rape shield statute. And in order for the trial judge or this court to look at the trial judge's exercise of discretion in barring under the rape shield statute any reference to the circumstances surrounding the victim's outcry to her neighbor in May of 2006, you have to look at whether or not under the rape shield statute there was any evidence even shown at the beginning of sexual activity between the victim and this 18-year-old boy. Initially, the defendant moved in limine, and this is about the rape shield statute, whether this evidence can come in under that particular statute. The defendant moved in limine to admit evidence that when she first accused the defendant of having sex with her since she was nine years old, that she was found naked in bed with her neighbor's 18-year-old grandson. There was no formal offer of proof or any ability that the defendant has to establish that any sexual activity actually occurred between the complaining witness and that teenage boy. Counsel, what's the reasonable inference? I don't think you can even get to a reasonable inference, Your Honor. Were they just napping? They were found naked. Found naked is not the functional equivalent of any act of sexual penetration. In fact, defense counsel before Judge Hill at trial conceded that there was no evidence of what actually occurred between the defendant, I'm sorry, between the victim and that 18-year-old grandson. They were found naked in bed. There was no evidence. They were found naked in the pond, skinny dipping. They were found naked in a bed in a bedroom. And there was absolutely no evidence which the defendant could put forward in an offer of proof to show that they were engaged in an act of sexual activity. Counsel, why was the grandmother so concerned about the absence of blood then? She could have. Again, Your Honors, the record is not complete as to what exactly she saw. Maybe she said, get out of bed and pull back the covers and didn't see blood. You have no idea. This record does not bear out what occurred between the 18-year-old boy and the victim. Does the fact that that's missing from the record concern anybody? I think it should in terms of, and in fact, what the trial judge said when he initially, Judge Obish, when he looked at whether or not there was some alleged sexual activity between the victim and the boy, that it wouldn't have been relevant at all to whether or not she made the allegation at that time against the defendant. You have Lucy Covington. If you want to believe what was at least discussed about it, Lucy Covington says, why aren't you bleeding? And her response immediately is, because the defendant's been having sex with me for the last five years. So that particular piece of it, before you can even get to the rape shield statute, is whether or not there was even any sexual activity between the 18-year-old and the victim. In the court, in your judgment, it's barred from making any reasonable inferences from those circumstances. Is that right? I think when you're talking about what evidence can come in before a trial, you're factored on a yes. That's the whole part of it, is there cannot be a reasonable inference. There has to be evidence of it. There has to be evidence of sexual activity. That's exactly what the rape shield statute holds as inadmissible, is the prior sexual activity or reputation of the victim. The only exceptions, again, is where there's consent, which isn't at issue here, or where it is constitutionally required to be admitted. In order for it to be constitutionally required to be admitted, it has to be A, relevant, and B, it has to be relevant to either a motive or a bias on part of the victim to falsely implicate the defendant, or in a case where here, the victim is a child. But here you've got a case where an event occurred. How long has gone on between the event occurring and when you've got the involvement of the police and the state's attorney? Well, do you mean the event with the 18-year-old boy or the event with the defendant? I mean, the event with the defendant is. I'm not interested in the defendant.  The event in the bed, following the event or whatever that might be, in the bed? How many weeks, months transpired? Not that long. Lucy found out what happened. Lucy told her mother. The defendant was asked to leave the home. It was maybe a couple of weeks until maybe a month, maybe a month or so before she spoke with the teacher. You've got a child who has got that period of time to benefit her creating whatever atmosphere she desires without anybody hitting on it immediately before she has an opportunity to fabricate. Well, her opportunity to fabricate, Your Honor, has to come from, you know, you have to show that she has some motive or bias against this. She has some motive or bias to falsely implicate him at the time that she's confronted with some activity with someone else. The defendant has shown absolutely no nexus between what she says to Lucy and a motive to implicate him falsely. Well, didn't she testify that she'd often heard the defendant and her own mother fighting and the defendant and she thought the defendant had been hitting her mother? I don't know if it was often. She did testify that when she was initially abused by him the first time when she was nine, that he told her not to tell anybody and not to tell anybody about what had happened. Her mother asked her on several occasions and she didn't tell her. She did say that she heard her mother and the defendant. Her mother was never around, first of all. Her mother was never around. She did hear her mother and the defendant fighting occasionally. She was afraid for her mother. She didn't want to say it. She didn't want to really ruffle any feathers is why she didn't. She didn't want to ruffle any feathers about it. But her motive is. It may also have been that she just didn't like him because he fought with her mother. Again, that was a question for the trier of fact to make that determination. You also have to consider the fact that, quite honestly, that the defendant, I mean, he's saying that she had a motive to fabricate when she's caught naked in bed with an 18-year-old boy, yet he admits to having sex with her. He admitted on one occasion he had sex with her. It was right before or after her 14th birthday. He told that to two detectives and a state's attorney. The fact that it wasn't materialized in written or signed does not defeat the fact that he made an admission. And that would totally defeat any motive to fabricate. So you get sloppy police work. I don't know that, Your Honor. Well, I'm saying this whole case is kind of sloppy. What would you characterize it as if the most powerful piece of evidence in a criminal case is a confession from the defendant, his own words? If that's not put in a police report, that huge piece of evidence, how would you characterize it? Well, I think that it was, in fact, it was memorialized by the state's attorney who put that, his written substance of what the defendant said. He did memorialize it. The defendant didn't sign it. I think there was some issue that came up, not a trial, but that was discussed, that it wasn't allowed to be presented because, in fact, the defendant requested a lawyer at some point. And then from there on, the statement wasn't signed. But wasn't the statement by the state's attorney coming from the police officer and not from the defendant? No. The state's attorney spoke with the defendant. The defendant admitted to him that he had had sex with the, he admitted to one act of sexual penetration with this victim. And that admission would certainly undermine his claim that she had a motive to fabricate that he had been sexually abusing her. It would certainly undermine that, his admission that he, in fact, had sex with her. Excuse me, counsel. The way that the state's attorney memorialized that statement, first of all, the statement by the defendant was not under oath. And when he was under oath in court, he denied it, is that correct? That's correct. OK. And secondly, wasn't there some confusion about when he was actually under arrest and whether or not there was actually a warrant to arrest him? Wasn't there some confusion or some question about that? There was, Your Honor. A motion to suppress arrest and suppress evidence was presented. And it was denied in terms of when his arrest occurred. And ultimately, the trial court found that his arrest did not occur at his home, but did occur, in fact, at the police station. So I don't know how that doesn't really necessarily factor into whether or not this evidence of alleged sexual activity under the rape shield statute should have been or not been admitted. Well, do you think the outcome would have been had the rape shield not been an issue? I don't think the outcome would have been any different at all. In fact, I think it would have been almost prejudicial to the defendant to have evidence introduced that this victim who says, why aren't you bleeding? Why aren't you a virgin? Well, I'm not a virgin because the defendant has been having sex with me since I was nine years old. I don't think that would. I think that would have been detrimental to the defendant in this case. And certainly, wouldn't have been. Well, certainly, again, I still argue that under the rape shield statute, even if you would have found, as you pointed out before, even if you find that she's been having sex with a boy and with another boy and with another boy, whatever she's doing, that is not admissible under the rape shield statute. Well, it just isn't. That's not the point. It's the particular circumstances and timing of the outcry. That's what we're addressing. That's what we're focused on. Isn't there, counsel, a reasonable suspicion and a good faith basis to inquire when you find a 14-year-old in bed, naked, with an 18-year-old neighbor? No, I don't think there is. And if there is, you still have to fall, Your Honor, within the parameters of the rape shield statute. You cannot allow a victim's sexual, if you want to call it her sexual activity, come into evidence. Yeah, but that's generally speaking. There are exceptions. The fact of the matter is, if there's a constitutional requirement to allow that, you have to then allow that. And we're talking about a Sixth Amendment right to confront and cross-examine witnesses when the circumstances suggest there possibly could be a motive to fabricate or deflect attention away from the individual that she's found in a very, very compromising position. And I would suggest to you, again, that you cannot speculate. That's speculating. She's found in a compromising position. You have to, that requires you to speculate what might be reasonable to presume. She doesn't want to implicate the teenager because maybe there's something going on with that. You don't know that. This court would have to find. But that's where the inquiry comes. That's where the cross-examination comes in. And then the fact, well, let me finish. And then the fact finder makes that determination. But the inquiry. It doesn't preclude the inquiry. It doesn't preclude the right to confront and cross-examine witnesses against you, as is set forth in the Sixth Amendment to the United States Constitution. Then the fact finder makes a determination as to what weight or credence to place on that testimony. The inquiry, then, however, your honor, calls for the elicitation of a hearsay response. What they want to do is they want to cross-examine the complaining witness. And what they want to say to her, were you, what do they want to answer? Were you having sex with someone else? That violates the rape shield statute. And number two, what did Lucy ask you and what did you say to Lucy? That calls for a hearsay response, which would then bolster the credible. No, I reject that, because that's your suggestion as to how that examination would proceed. There's a clear, obvious, and appropriate method to engage in that examination, which would be inconsistent with the one that you just set forth. Respectfully, your honor, I disagree. I don't think there's any way to get that evidence out, other than in that manner. Unless you called Lucy, it would call for a hearsay response. The state's not looking to elicit an outcry and the hearsay nature of what her outcry was. The defense is looking to bring that in, and it's going to call for a hearsay response. It may be that the state doesn't want it, but it may be that the defense has a right to it. Again, there are specific. In his ability to confront a witness. There are specific parameters under the rape shield statute under which it is allowed to come in. It must directly relate to a couple of things. It can be admissible if it directly relates to the defendant's theory of the case. The defendant's theory of the case here, I didn't do it. How does her statement, how would her statement or evidence that she was naked in bed with a teenage boy under the rape shield statute, how would that then affect or hinder or limit or prevent him from presenting his theory of defense? It doesn't at all. If his theory of defense, and he testified at trial that he testified at trial, the victim and I were close. We went shopping together. We did homework together. We went to the park together. He hasn't shown that there's any reason that she would frame him, that there was any reason she would testify or she would have a motive to falsely implicate him. They had, according to him, they had a close relationship. And they even had sex on one occasion. So that doesn't, that doesn't. Counsel, he did not testify to that. I'm sorry. He gave a statement to the, I think I'm, he gave a statement to the police officer and two police officers, two detectives and a state's attorney that he, in fact, had had sex with the victim on one occasion. So that, I would say, Your Honor, that undermines his claim that she has a motive to falsely implicate him in any way, shape, or form. And she doesn't, his theory of defense has not been hindered and has not been limited by. Excuse me. This victim appears to be, at the time of trial, she was 16. She had two years to get more mature. And who knows who she talked to. She'd also, when she was 14, apparently was, I would say, pretty sophisticated based on the testimony she gave about what was going on in her life when she was 14. The defense, you don't think the defense had a right to figure out, to ask her the circumstances of her being found in bed and whether or not she, for example, knew that if she was in bed having sex with an 18-year-old that that would cause him, the 18-year-old, some problems? Again, Your Honor, not if it's violative of the rape shield statute. Isn't that a motive? Doesn't that go to her motive to create an alternative reality? No. Not in a case, no, I don't believe it does. In a case where you have such as here, I mean, you can't bring in this evidence to say because she's sleeping with, if, in fact, I still submit that it wasn't established. If you find she's sleeping with the boy next door and even the boy next door and even the boy next door, evidence of a child engaging in other sex acts or being molested by other people is not relevant and does not establish, just because that occurred, that the defendant didn't also sexually abuse her. It doesn't mean under the rape shield statute just because she has some other relationship, even of a sexual nature, that the defendant did not do what she's accusing him of. We're not suggesting that. We're suggesting that it is possible that the defense in this case should have had an opportunity to question her more thoroughly about the circumstances of that outcry to go to the motive for it. And again, my position is that it would not have been, there was no motive. They could not establish a motive for there is no nexus between what is she doing. Whatever happened to that 18-year-old boy? The record does not indicate anything about that 18-year-old boy. He couldn't be identified. He couldn't be. He couldn't be identified? Are you kidding me? He wasn't identified by name. He was Lucy Covington's grandson. He wasn't identified. The record bears out that he wasn't identified by name. He wasn't identified by any kind of police report, any kind of anything, anything, anything. He just disappeared out of this whole thing. The record doesn't bear that out, Your Honors. But under the Rape Shield Statute, and just so I want to make sure that I'm clear, under the Rape Shield Statute, that the motive to fabricate, there has to be some kind of bias or motive on her part to show that when she's asked, why aren't you bleeding, and she says right away, because the defendant's been having sex with me for the last five years of my life, that there's no connection between whatever it is you might think she was caught doing and that response under the Rape Shield Statute. Any evidence in the record as to the position of these naked bodies in that bed, in that bedroom? Absolutely none. Absolutely none. And no evidence from the grandson, either? Absolutely not. He was never called as a witness. Or, as far as this record bears out, from Lucy Covington. Naked. That's what you know. Is naked. Anything further? I would just like to point out, with respect to the defense argument in terms of the state's attorney capitalizing on, during closing argument, as to the comments related to Karen Clark and the complaining witness being consistent and, in fact, in connection with what the doctor said, those comments were waived. They were not objected to. They may have been raised during his motion for new trial, but they were not complained of at the time they were made. And I would argue that they were waived. I would also argue that, to the extent that she was consistent in what she told the doctor, that was based on the evidence that was produced at trial. And finally, counsel, you would concede, would you not, that the circumstances of the outcry, 14 and the 18-year-old naked in the bed in the bedroom, those circumstances were the triggering event that led to the outcry? I don't know that I called it a triggering event, but, in fact, when she was found in that position, again, just naked in bed, she was asked, why aren't you bleeding? And that was when she did, in fact, for the first time, say, because the defendant has been sexually assaulting me for the last five years of my life. For these reasons, I would ask you, and those stated in my briefs, I would ask you to affirm the defendant's conviction for criminal sexual assault. Thanks. I just have a couple quick points. One, the state, in its brief and today, makes the same argument that, oh, the circumstances of the initial outcry was just being naked in bed, yet they argue that it was properly excluded on the rape shield statute, which excludes evidence of sexual conduct. So I think that's an inconsistent position to make. She raised something, though, that I keep going back to, and I kind of conflict with my two fellow justices, I think, that had it come in, it would have convicted him more so. That's what the states say. In other words, everything she said and everything that occurred would have come in. Therefore, he's not as bad as he's portrayed to be, is the impression you would then get. And that she's whatever she is. Well, I think, again, what's unique about this case is the evidence that was excluded was the timing. And this case is really, it's almost a case that you might think that the state might not have elected to try because so much time and so poor police work was done here. But that's my opinion. But the fact is, had it come in, it probably would have convicted him. Well, I don't, again, I just, to quickly emphasize, and this kind of gets to the second point I wanted to make, again, it is the timing of the outcry that's so critical. And the jury's understanding of the entire case would have been entirely different. The way the evidence was presented, that there was a final assault, and then the next day she goes and it all comes out suggesting that she finally had enough. But that's not the facts of this case. It was the timing. And we don't know that it was immediately, oh, I'm making up this entire story on the spot. So I don't, I think the jury certainly would have heard a different version. I mean, I think it puts the entire case in a different light. And again, my second point about relying on the evidence that Mr. Weatherspoon made these alleged admissions without any memorialization, that also would have been viewed in an entirely different light. I mean, part of defense counsel's argument to the jury was, you know, the state's evidence is weak. They didn't memorialize the statement. They needed to exaggerate or somehow putting doubt on the fact that he made these admissions. Well, that looks entirely different when the jury had no idea how weak the state's case was. Because there was evidence to rebut the powerful presumption that the physical evidence of sexual activity had to come from the accused. That's well-recognized in the cases. And that was something that the doctor's notes indicated that she had engaged in consensual sex. And the other point of the circumstances of the initial outcry, I mean, and again, as my first point, you know, what exactly happened, it's the timing that matters. And it's the timing, you know, something is discovered, and then the outcry comes out. And given the circumstances that the state, the prosecutor below, agreed to during the offer of proof before trial, certainly, I think, provides a reasonable inference to say that there was a motive to deflect attention away from the situation she was found in. And those relevant approvative matters were constitutionally required to be admitted in this case. And that's why the Rape Shield Statute should have yielded and allowed defense counsel to present these theories to the jury. And for those reasons, and those stated in the brief, unless the court has other questions. In fact, in terms of the strength of the state's case, the infirmities, would you agree, are reflected in the fact that two counts were charged, deliberations occurred over a two day period for nine hours in time, and they yielded a compromised verdict where they acquitted him in one count, or didn't convict him in one count, and convicted him in the other. Precisely, and that's based on the facts the jury heard, without any consideration about the facts the jury didn't hear. I am, you haven't spoken about the doctor's testimony. Well, I would, if there's, what I would say about the doctor's testimony is the doctor told the jury that her findings, hopefully this answers some of the concerns that you have, and if there's a more specific point that you'd like more clarity with. But the doctor told the jury that her physical, the findings of her physical examination were not consistent or inconsistent with the allegations, yet told the jury her conclusion was that they were consistent with the complainant's statements. So the jury hears all the statements, all the allegations of abuse all over again, and then the doctor tells the jury that it's my conclusion that her statements are consistent. But during the sidebar, it's shown that a basis of this expert's conclusion was that what was consistent were certain evidence that suggested physical, other sexual activities, not just her statements, as well as the doctor noted that the complainant had engaged in consensual sex. So, I mean, the doctor's testimony, this is the excluded, the evidence that was excluded, that was kept from the jury, provided another, is just another basis for this court to reverse Mr. Weatherspoon's conviction. Is it more likely that the evidence that was excluded from the doctor's testimony gives both the state and the defense opportunities to explore other possibilities that weren't explored? Right, I guess, maybe I don't fully understand your question, but I would. There was some, in the briefs and in the testimony, there's some, there's a report, part of the doctor's report is that this child has a sexually transmitted disease. Yes. And that was never explored. The importance of it, or unimportance of it to the child and or to the defendant was not explored? Correct. And that's a concern to me. Yes, and I understand the court's concern. I think, you know, today I'm emphasizing the doctor's note about consensual sex, because I think that goes directly to an alternative source of this evidence, but as well as the evidence of the sexually transmitted disease was not, I'm sorry. The consensual sex, I don't know how a doctor could have been under that conclusion unless the child told her that. I mean, just from a physical exam, I don't know how you would know that, but from a physical exam, you would know whether or not there was a sexually transmitted disease at the time that the child was examined on July 17th. Right. Now, that doesn't tell you anything about what happened between the time the defendant moved out and the child was examined, and it probably can't tell you very much about what happened before unless the defendant had also been examined, but because this evidence was excluded, as I understand it, there was no exam done on the defendant. That avenue was entirely not developed at all. So it doesn't tell us everything, but it is possible that it tells you something. Is there a correct statement? Correct, it's another part of the theory that the defense counsel cannot present, and before trial, that was something the state, you know, went first and said, we want to keep this information out. Defense counsel complained, noting that Mr. Weatherspoon didn't, but again, how that information played out could not be, was not, was entirely excluded, and the theory wasn't developed at trial. Unless. So what's your view on the state's position that the rape shield statute is operative and in play in this case, and should exclude, cause the exclusion of prior sexual activity of the victim, yet they come forth and say, well, there is no evidence of prior sexual activity, just two folks laying naked in a bed. Right, I would say. How do you address that, what appears to be an inconsistency in their position? I believe it is an inconsistency. I mean, I think two responses to that are first, I think the way that the state explained it before trial and in the trial court, what is not consistent with the state's position on appeal, and the state's position on appeal is to minimize and muddy up what the prosecutor agreed to at that pretrial proceeding. But again, what exactly happened, and I think there's certainly enough details to understand what was going on, but what exactly happened is, what's relevant about that is not to just dirty up the complaint, it is meant to show the timing, and the timing, it was that discovery of what was going on is what triggered this outcry. Counsel, I apologize, I do not recall whether anybody established why the mom didn't call detectives when she became aware of this in May of 2006. There's no, I don't think there's any development in the record about that. Because then, presumably the exam would have been closer in time to when the outcry happened. Right, those facts are unknown. The mother was told there's evidence of that, but there's no evidence about why the weeks later there's additional steps. All right, thank you. Thank you. Thank you, counsel.